IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | |
| | : | CHAPTER 13 |
| DONALD LINWOOD DEMEZA, | : | |
| | : | CASE NO. 1-16-bk-02789 RNO |
| Debtor | : | |

*************************************************************************

| | | |
|---|---|---|
| RICHARD J. HACKERMAN, ESQUIRE | : | |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| DONALD LINWOOD DEMEZA | : | |
| | : | |
| Defendant | : | ADVERSARY NO. 1-16-ap-00141 RNO |

# OPINION[1]

In this non-dischargeability action, the Chapter 13 Debtor moved to dismiss both counts of the Second Amended Complaint. For the reasons stated below, I will deny the Motion to Dismiss with respect to Count One which is based upon the 11 U.S.C. § 523(a)(2)(A) fraud exception. The Motion will be granted, with prejudice, with respect to Count Two which is grounded upon the 11 U.S.C. § 523(a)(4)[2] fiduciary exception.

## I. Jurisdiction

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

## II. Facts and Procedural History

Donald L. Demeza ("Debtor") filed a Voluntary Petition under Chapter 13 of the

---

[1] Drafted with the assistance of Maria Babajanian, Esq., Law Clerk.

[2] Unless otherwise noted, all future statutory references are to the Bankruptcy Code, 11 U.S.C. § 101, *et seq.*, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 37 ("Bankruptcy Code").

Bankruptcy Code on July 5, 2016. The attendant schedules, statements, and other documents were also filed. On February 23, 2017, an Amended Order was entered confirming the Debtor's Chapter 13 Plan. Am. Order Confirming Ch. 13 Plan, February 23, 2017, ECF No. 94. This case was originally assigned to The Honorable Mary D. France. In anticipation of Judge France's retirement, on February 26, 2017, the case was reassigned to me.

Pre-petition, Richard Hackerman ("Creditor") commenced an action against the Debtor in the United States District Court for the Middle District of Pennsylvania. The District Court diversity action was commenced on November 26, 2013; that proceeding is filed to No. 1:13-02883-SES ("Diversity Action"). In the Diversity Action, Creditor sought damages from the Debtor due to the death of the Creditor's pregnant broodmare and her foal. The broodmare and foal were in the Debtor's possession at the time the foal was delivered which arguably led to the euthanization of the broodmare and the foal.

In the underlying Chapter 13 case, the Creditor previously moved to convert the case to a case under Chapter 7 of the Bankruptcy Code. Mot. to Convert Case to Ch. 7, September 4, 2016, ECF No. 28. The Motion was briefed and argued and, on February 21, 2017, Judge France entered an Opinion and an Order which denied the Motion to Convert. The Court's Opinion appears at 567 B.R. 473 (Bankr. M.D.Pa. 2017) ("Conversion Opinion"). Creditor appealed the denial of the case conversion and that appeal is pending in the United States District Court for the Middle District of Pennsylvania.

Today, I consider an Adversary Proceeding brought by the Creditor against the Debtor seeking non-dischargeability of his claim pursuant to certain subsections of § 523 of the Bankruptcy Code. Specifically, I consider the Motion to Dismiss filed by the Debtor in response

2

to the Creditor's Second Amended Complaint. Second Am. Compl. to Determine Dischargeability of Debt and Objection to Discharge, April 27, 2017, ECF No. 20 ("Second Amended Complaint").

Count One of the Second Amended Complaint seeks non-dischargeability of the Creditor's claim pursuant to § 523(a)(2)(A), which is often referred to as the fraud exception. Count Two seeks a determination of non-dischargeability grounded upon § 523(a)(4), commonly known as the fiduciary exception. On May 10, 2017, the Debtor moved to dismiss the Second Amended Complaint. Debtor's Mot. to Dismiss Richard J. Hackerman's Second Am. Compl. to Determine Dischargeability of Debt and Obj. to Discharge, May 10, 2017, ECF No. 21 ("Motion to Dismiss"). The Motion to Dismiss seeks dismissal of both Count One and Count Two of the Second Amended Complaint, with prejudice. The Motion to Dismiss has been briefed and was argued at a hearing held on July 20, 2017; it is now ripe for decision.

## III. Discussion

### A. Motion to Dismiss Standard

The Motion to Dismiss alleges that Creditor has failed to state a claim upon which relief can be granted. Federal Rule of Civil Procedure 12(b)(6) requires dismissal of a complaint which fails to state a claim upon which relief can be granted. Rule 12(b)(6) applies in bankruptcy adversary proceedings. F.R.B.P. 7012(b).

Fed. R. Civ. P. 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief". This Rule is also applicable in bankruptcy adversary proceedings. F.R.B.P. 7008. At this stage, the complaint's well-pleaded factual allegations are assumed to be correct. However, legal conclusions are not entitled to the

3

assumption of truth. Ultimately, the court must determine whether the complaint plausibly gives rise to an entitlement to relief. *Santiago v. Warminster Tp.*, 629 F.3d 121, 129 (3d Cir. 2010).

Generally, while detailed factual allegations are not required in every complaint, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1964-65 (2007).

Some aspects of complaints are subject to heightened pleading requirements. Count One of the Second Amended Complaint is based upon § 523(a)(2)(A) of the Bankruptcy Code. That subsection excepts from an individual debtor's Chapter 13 discharge any debt:

> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by–
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

11 U.S.C. § 523(a)(2)(A). Where fraud is alleged, the party must state with particularity the circumstances constituting fraud. Fed. R. Civ. P. 9(b); Fed. R. Bankr. P. 7009(b). The particularity pleading requirement for fraud allegations serves important objectives. It gives a defendant fair notice of the claim against him, provides an increased measure of protection for a party's reputation, and hopefully, reduces the number of frivolous suits brought to extract settlements. *In re Rockefeller Center Properties, Inc. Securities Litigation*, 311 F.3d 198, 216 (3d Cir. 2002); *Craftmatic Securities Litig. v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989); *also see*, *In re Glunk*, 343 B.R. 754, 757 (Bankr. E.D.Pa. 2006) (complaints under § 523(a)(2)(A) are governed by the heightened pleading requirements of Federal Rule of Civil Procedure 9(b)); *In re Aseireh*, 526 B.R. 246, 250 (Bankr. N.D.Oh. 2015). The Debtor argues that the Second

4

Amended Complaint does not meet the fraud pleading standard.

A motion to dismiss is filed at a summary stage of the proceedings. In ruling on the Motion to Dismiss, I may properly consider the Second Amended Complaint, as well as established exhibits and matters of public record. *Pension Ben. Guar. Corp. v. White Consol. Industries, Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993); *Taylor v. Henderson*, 2015 WL 452405, at *1 (D.Del., Jan. 30, 2015). I may also consider an indisputably authentic document which the defendant attaches as an exhibit to a motion to dismiss, if the plaintiff's claims are based on the document. *Pension Ben. Guar. Corp.*, 998 F.2d at 1196; *also see*, *Miller v. Clinton County*, 544 F.3d 542, 550 (3d Cir. 2008). In addition to the Second Amended Complaint, I will consider the provisions of a Boarding Agreement and Liability Release dated March 12, 2011. The Boarding Agreement was attached as an exhibit to Debtor's motion to dismiss the original complaint in this matter. Debtor's Mot. to Dismiss Richard J. Hackerman's Compl. to Determine Dischargeability of Debt and Objection to Discharge, October 24, 2016, ECF No. 3 ("Boarding Agreement"). The Boarding Agreement appears to bear the signature of the Creditor and he has not disputed its authenticity.

The Federal Rules of Evidence apply to proceedings before United States Bankruptcy Judges. *In re Il Nam Chang*, 539 B.R. 733, 736 (Bankr. M.D.Pa. 2015); *In re Barnes*, 266 B.R. 397, 403 (8th Cir. B.A.P. 2001). Pursuant to F.R.E. 201, I will take judicial notice of the dockets in the Debtor's underlying Chapter 13 case, as well as the docket in this Adversary Proceeding. I further take judicial notice of the contents of the bankruptcy schedules and statements which are not in dispute.

5

B. **General Non-Dischargeability Standards**

An important purpose of the Bankruptcy Code is to provide an economic fresh start to the honest debtor. *In re Cohn*, 54 F.3d 1108, 1113 (3d Cir. 1995); *In re Marques*, 358 B.R. 188, 193 (Bankr. E.D.Pa. 2006). Consistent with this purpose, the Bankruptcy Code's exceptions to the discharge of indebtedness are strictly construed against creditors and liberally construed in favor of debtors. *In re Cohn*, 54 F.3d at 1113; *In re Marques*, 358 B.R. at 193; *In re Roemmele*, 2011 WL 4804833, at *4 (Bankr. E.D.Pa., Oct. 11, 2011).

Section 523(a) excepts certain debts from an individual debtor's bankruptcy discharge. Further, in a Chapter 13 bankruptcy case, some, but not all, of the § 523 discharge exceptions apply. A Chapter 13 discharge excepts debts of the kinds specified in §§ 523(a)(2) and 523(a)(4). 11 U.S.C. § 1328(a)(2); *In re Waag*, 418 B.R. 373, 377 (9th Cir. B.A.P. 2009); *In re Kozlowski*, 547 B.R. 222, 225 (Bankr. E.D.Mich. 2016).

Generally, the Second Amended Complaint should be subjected to a two-part inquiry. First, does Creditor hold an enforceable claim against the Debtor under applicable non-bankruptcy law? Second, is the debt non-dischargeable under a Bankruptcy Code provision – specifically, §§ 523(a)(2)(A) or (a)(4)? *In re Witmer*, 541 B.R. 769, 774 (Bankr. M.D.Pa. 2015); *In re August*, 448 B.R. 331, 346-47 (Bankr. E.D.Pa. 2011).

Does Creditor hold an enforceable claim against the Debtor? I first note that the Bankruptcy Code broadly defines the term "debt" to mean "liability on a claim". 11 U.S.C. § 101(12). The term "claim" includes "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; . . ." 11 U.S.C. § 101(5)(A); *In re Grossman's Inc.*, 607

F.3d 114, 121 (3d Cir. 2010); *In re Orleans Home Builders, Inc.*, 2017 WL 665953, at *6 (Bankr. D.Del., Feb. 17, 2017).

Two present factors allow me to conclude that the Creditor holds an unliquidated claim against the Debtor. First, in ruling on the Creditor's prior motion to convert the underlying case, Judge France found "Hackerman [Creditor] holds a contingent, unliquidated and disputed claim against Debtor in the amount of $500,000." *In re Demeza*, 567 B.R. 473, 478 (Bankr. M.D.Pa. 2017). Second, I take judicial notice that Creditor filed Proof of Claim No. 7-1 in the Debtor's Chapter 13 case. The unobjected to proof of claim is an unsecured claim in the amount of $500,000.00, and includes an attachment which indicates:

> This claim includes the following:
> 1. Value of Mare
> 2. Value of Foal
> 3. Medical/Veterinarian Expenses
> 4. Ambulance/Horse Transport Services
> 5. Loss of mare's future foals
> 6. Attorney fees
> 7. Expert Witness fees.
> 8. Court costs
> 9. Interest
> 10. Punitive damages.

Proof of Claim No. 7-1, at 4. A duly filed proof of claim constitutes prima facie evidence of the validity and the amount of the claim. Fed. R. Bankr. P. 3001(f); *In re Sacko*, 394 B.R. 90, 98 (Bankr. E.D. Pa. 2008).

Based upon the above two factors, I conclude that Creditor has an allowable claim against the Debtor. Next, I will consider whether Creditor's claim is non-dischargeable under §§ 523(a)(2)(A) or 523(a)(4) of the Bankruptcy Code.

7

### C. § 523(a)(2)(A) Non-Dischargeability Standard

Count One of the Second Amended Complaint is based upon § 523(a)(2)(A) of the Bankruptcy Code. As noted above, that subsection provides that a debt is non-dischargeable when it is:

> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by –
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

11 U.S.C. § 523(a)(2)(A).

The Second Amended Complaint contains a number of salient factual allegations concerning dealings between the Creditor and the Debtor. For example:

> 2. Debtor is and/or was in the business of raising, breeding, foaling, taking care of thoroughbred horses for himself and for others for profit.

Second Am. Compl. to Determine Dischargeability of Debt and Objection to Discharge, ¶2, p 3, ECF No. 20.

The Second Amended Complaint also alleges that the Creditor purchased a broodmare, Miss Savannah Rose ("Broodmare"), as a yearling. It is further alleged that the Broodmare earned over $100,000.00 when racing, ". . . which Debtor knew, and Debtor acknowledged Plaintiff's mare was extremely valuable and important." Second Am. Compl. to Determine Dischargeability of Debt and Objection to Discharge, ¶5, p 3, ECF No. 20. The Second Amended Complaint alleges that the Debtor promised to take better care of the Broodmare than his own horses. It is further alleged that the Debtor falsely claimed to be an expert in care of thoroughbred horses and the foaling process. Second Am. Compl. to Determine Dischargeability

8

of Debt and Objection to Discharge, ¶¶6-7, p 3-4, ECF No. 20.

The pleading alleges that in the spring of 2012, "like the previous spring," the Debtor personally offered to foal the Broodmare. It is also alleges that the Debtor lied regarding his ability to care for the Broodmare and represented to the Creditor that he would be constantly watching the Broodmare. Second Am. Compl. to Determine Dischargeability of Debt and Objection to Discharge, ¶¶8-10, p 4, ECF No. 20.

The Creditor also pleads that the Debtor left the Broodmare alone for "6-9 hours at [a] time while he was attending his own affairs . . ." Second Am. Compl. to Determine Dischargeability of Debt and Objection to Discharge, ¶12, p 4, ECF No. 20. Creditor further alleges that when the Broodmare delivered a foal on May 8, 2012, the delivery was performed by "four individuals with no experience, skill or understanding of what was happening or what was supposed to happen . . ." Second Am. Compl. to Determine Dischargeability of Debt and Objection to Discharge, ¶13, p 4-5, ECF No. 20. It is alleged that the Debtor was not present at the time of the delivery of the foal. It is further alleged that no veterinarian or other professional was called to assist in the delivery. Second Am. Compl. to Determine Dischargeability of Debt and Objection to Discharge, ¶14, p 5, ECF No. 20. Paragraph 16 of the Second Amended Complaint alleges, "[a]s a result of the actions of the Debtor, Miss Savannah Rose [Broodmare] received injuries so severe that she had to be euthanized less than forty-eight hours later." The Second Amended Complaint further alleges that the Debtor falsely represented that he had asked a veterinarian to examine the Broodmare days before the ill-fated delivery. Second Am. Compl. to Determine Dischargeability of Debt and Objection to Discharge, ¶26, p 7, ECF No. 20.

Paragraphs 32 and 33 of the Second Amended Complaint suggest that the Broodmare's

foal also died after delivery.  Paragraph 32 refers to the death of the Creditor's horse**s**, plural.  Paragraph 33 alleges damages for the loss of the value of the "mare *and foal*".  Additionally, the Creditor's proof of claim includes "value of foal."

To survive the Motion to Dismiss, Count One of the Second Amended Complaint must state a plausible claim for relief under § 523(a)(2).  The first element of a cognizable claim is that the debtor received money, or other value, based upon his false representations.  *In re Glunk*, 343 B.R. at 758.  I find that this requirement has been satisfied.  The Boarding Agreement, which appears to have been prepared by the Debtor, requires the Creditor to pay a daily fee for boarding the Broodmare with the Debtor.  Viewing the facts in the light most favorable to the Creditor, which is the appropriate lens at this stage, I conclude that the Creditor paid boarding fees to the Debtor, in reliance upon the represented care which would be given to the Broodmare.

I have already referenced several of the alleged material misrepresentations which the Debtor made to the Creditor.  To be actionable, a misrepresentation must be both material and made with the intent to deceive the party to whom it was directed.  *Field v. Mans*, 516 U.S. 59, 68, 116 S.Ct. 437, 442-43, 133 L.Ed.2d 351 (1995).  Intent to deceive may be inferred from the totality of the circumstances in the case.  *In re Cohn*, 54 F.3d at 1118-19.

Considering the totality of the circumstances, I note that the Second Amended Complaint alleges that the Broodmare delivered on May 8, 2012.  Second Am. Compl. to Determine Dischargeability of Debt and Objection to Discharge, ¶13, p 4, ECF No. 20.  The Boarding Agreement is dated March 12, 2011, more than one year earlier.  The span of time between the date of the Boarding Agreement and the delivery date, coupled with the allegations of Paragraph 8 of the Second Amended Complaint, suggests that there was a prior course of dealing between

the Creditor and the Debtor. Paragraph 8 of the Second Amended Complaint states "[i]n the spring of 2012, *like the previous spring*, Donald Demeza [Debtor] personally offered to foal the [sic] Miss Savannah Rose [Broodmare]." Second Am. Compl. to Determine Dischargeability of Debt and Objection to Discharge, ¶8, p 4, ECF No. 20. At this stage, in order for Count One to survive, I must find that the claim has been stated with plausibility, not with certainty. I conclude that the allegations of the Second Amended Complaint, together with the provisions of the Boarding Agreement, state a plausible claim that the Debtor made materially false representations to the Creditor with the requisite intent to deceive.

A third element of a claim for non-dischargeability under § 523(a)(2)(A) requires a showing that the creditor justifiably relied upon the Debtor's material misrepresentation. *Field v. Mans*, 516 U.S. at 73. It is noteworthy that in *Field v. Mans*, the Supreme Court rejected the notion that creditor's reliance must be reasonable. Rather, it must be only justifiable. Justifiable reliance is a subjective standard which considers the qualities and characteristics of the particular creditor who relied upon a particular representation. Reliance may be justifiable even though its falsity could have been detected by investigation. *In re Scott*, 294 B.R. 620, 628-29 (Bankr. W.D.Pa. 2003).

At oral argument, I learned that Creditor is a Baltimore attorney who has been engaged in the general practice of law for approximately thirty years. He also stated that he has owned racing horses for approximately twenty years and bred them for approximately ten years. At trial, the Creditor will have the burden of proving justifiable reliance by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 289-91, 111 S.Ct. 654, 660-61, 112 L.Ed.2d 755 (1991); *In re St. Laurent*, 991 F.2d 672, 677 (11th Cir. 1993); *In re Adalian*, 474 B.R. 150, 160

11

(Bankr. M.D.Pa. 2012). At this summary stage, I conclude that Creditor has plausibly pled that he justifiably relied upon Debtor's material misrepresentations concerning the care and attention which the Broodmare would receive.

The fourth element which Creditor must plausibly state under § 523(a)(2)(A) is that he suffered a loss or damage as a proximate consequence of the representations having been made. *In re Antonious*, 358 B.R. 172, 182 (Bankr. E.D.Pa. 2006); *In re Harris*, 2011 WL 2787722, at *5 (Bankr. M.D.Pa., July 14, 2011). As discussed in Section III.B. of this Opinion, the Creditor's unobjected to proof of claim constitutes prima facie evidence of the validity and amount of his claim. This presumption, coupled with the other allegations of the Second Amended Complaint, constitute a plausible claim for damages caused by the Debtor's representations.

Based upon my analysis, I conclude that Count One of the Second Amended Complaint has pled a plausible claim for relief pursuant to § 523(a)(2)(A). My Judgment will allow the Debtor twenty-one days from the date the Judgment to file an Answer to the Second Amended Complaint.

### D. § 523(a)(4) Non-Dischargeability Standard

Count Two of the Second Amended Complaint is based upon § 523(a)(4) of the Bankruptcy Code. This subsection excepts a debt from discharge which is "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4).

There is nothing within the four corners of the Second Amended Complaint which alleges that the Debtor committed embezzlement, that is the wrongful taking of personal property with which one has been entrusted. Neither is there any allegation of larceny, the

unlawful taking of someone's personal property with the intent to permanently deprive the possessor of his property. Therefore, I will confine my analysis to whether a plausible claim has been pled for fraud or defalcation *while acting in a fiduciary capacity*.

At oral argument, the Creditor argued that the Broodmare was the res of a trust maintaining, at least impliedly, that the Debtor acted as the trustee of the "trust."

Generally, federal law governs the determination of whether a debtor acted as a "fiduciary." *In re Casini*, 307 B.R. 800, 818 (Bankr. D.N.J. 2004). Also, the term "fiduciary capacity generally has a narrower meaning in bankruptcy than its traditional common law definition." *In re Dawley*, 312 B.R. 765, 777 (Bankr. E.D.Pa. 2004).

Some bankruptcy courts have found that a state statute, or a common law provision, may create a fiduciary relationship. Generally, such state law would have to clearly outline the debtor's fiduciary duties and identify the trust property. *In re Moran*, 413 B.R. 168, 185-86 (Bankr. D.Del. 2009); *In re Librandi*, 183 B.R. 379, 382-83 (M.D.Pa. 1995).

Federal and Pennsylvania state courts have utilized the Restatement (Third) of Trusts in reported decisions concerning trust provisions. *See Spear v. Fenkell*, 2016 WL 5661720, at *21 (E.D.Pa., Sept. 30, 2016); *Trust Under Agreement of Taylor*, _____ A.3d _____, 2017 WL 3044242, at *10 (Pa., July 19, 2017).

The Restatement (Third) of Trusts provides that a trust may be created by:

> (a) a transfer by the will of a property owner to another person as trustee for one or more persons; or
>
> (b) a transfer inter vivos by a property owner to another person as trustee for one or more persons; or
>
> (c) a declaration by an owner of property that he or she holds that property as trustee for one or more persons; or

13

> (d) an exercise of a power of appointment by appointing property to a person as trustee for one or more persons who are objects of the power; or
>
> (e) a promise or beneficiary designation that creates enforceable rights in a person who immediately or later holds those rights as trustee, or who pursuant to those rights later receives property as trustee, for one or more persons.

Restatement (Third) of Trusts § 10 (2003). I find that the Second Amended Complaint is wholly lacking as to the requirements for the creation of an express trust. There is no suggestion that title to the Broodmare was transferred to the Debtor or to a trust with him serving as trustee. Nor has it been pled that the Debtor has declared he held the Broodmare as a trustee for one or more beneficiaries.

It is well settled that a trustee typically exercises powers, with concomitant obligations, above and beyond those powers and obligations one would expect in a typical contractual relationship. The trustee typically has the power to manage the trust property. Restatement (Third) of Trusts § 70 (2007). A trustee also has all of the powers over the trust property (res) a competent individual has with respect to his individually owned property. Restatement (Third) of Trusts § 85 (2007).

Absent a trust agreement or applicable statute limiting a trustee's powers, I conclude that a qualified trustee could have the power to offer the entrusted property for sale, or to encumber the trust property. The most that has been pled here is that Creditor gave the Debtor possession of the Broodmare; generally, under the terms of the Boarding Agreement and the parties' oral agreement. Again, there is nothing within the Second Amended Complaint to suggest that title to the Broodmare passed into a trust, nor that the Debtor declared himself to be acting as a trustee, or exercised powers consistent with a trustee acting within the scope of a fiduciary

14

relationship.

As mentioned above, some bankruptcy courts have found that the fiduciary relationship requirement can be met were a trust is imposed by statute. Applicable state law may create a fiduciary relationship where it outlines fiduciary duties, identifies the trust property, and imposes trust-like obligations on a party. *In re Moran*, 413 B.R. at 185-86 (Delaware statute - identifying payments to a contractor as trust funds which could not be disbursed before payment of charges for labor or material - satisfied the express or technical trust requirements); *also see*, *In re Suarez*, 367 B.R. 332, 354-56 (Bankr. E.D.N.Y. 2007) (the New York General Business Law, which required debtor to hold fitness membership fees in escrow, satisfied fiduciary capacity requirement of § 523(a)(4)).

The Creditor has not identified any applicable federal or Pennsylvania statute which would satisfy the requirement of § 523(a)(4) as to the existence of a pre-petition fiduciary relationship with the Debtor. I note that the Creditor's Brief opposing the Motion to Dismiss does cite a Pennsylvania statute, 18 Pa.C.S.A. § 5511 - Cruelty to Animals. This is a criminal statute which criminalizes willful and malicious killing, disfiguring, or poisoning of domestic animals. I find that the Cruelty to Animals statute fails to meet the requirements for the statutory imposition of a trust pursuant to the requirements of § 523(a)(4). In a similar vein, Judge Twardowski considered a non-dischargeability action brought by a bank against individual debtors. At trial, he found that no defalcation violation of § 523(a)(4) occurred because no fiduciary relationship existed between the plaintiff bank and the debtors/defendants. The court noted that none of the underlying documents purported to create a trust, no relevant statute imposing fiduciary powers and obligations existed, and that no specific trust res could be

15

identified. *In re Ramonat*, 82 B.R. 714, 719-20 (Bankr. E.D.Pa. 1988).

In opposing the Motion to Dismiss, the Creditor cites the decision of *In re Cochrane*, 179 B.R. 628 (Bankr. D.Minn. 1995). *Cochrane* found that, under non-bankruptcy law, the concept of a fiduciary was broader than the concept of a trustee under an express trust. *Id*. at 634. I find *Cochrane* to be distinguishable from the facts at issue here. In *Cochrane*, the debtor/defendant was an attorney who assembled a group of investors to purchase his client's foreclosed interest in a residential condominium project. The defendant/attorney did not disclose to his clients that he owned twenty-five percent of the shares of the corporation which purchased the condominium project. In *Cochrane*, Judge Kishel found that the defendant/attorney acted in a fiduciary capacity because of Minnesota law which prohibited an attorney from self-dealing - in the subject matter of his retention - to the detriment of an unknowing client. *Id.* at 633. In the case at bar, the Creditor has again failed to identify any applicable common law or statutory requirements containing prohibitions similar to those present in *Cochrane*.

I conclude that the Boarding Agreement and the course of dealing between the Creditor and the Debtor only created an ordinary contractual relationship. At most, it appears that a bailment contract existed. A cause of action for breach of bailment might arise if the Debtor refused to honor the Creditor's demand for return of the Broodmare. *See Price v. Brown*, 545 Pa. 216, 221, 680 A.2d 1149, 1151-52 (Pa. 1996). Ordinary commercial relationships are excluded from the reach of § 523(a)(4). *In re Coley*, 433 B.R. 476, 496-97 (Bankr. E.D.Pa. 2010) (court denied defendant/creditor's motion for summary judgment under § 523(a)(4) based upon debtor's alleged breach of security agreement); *In re Schultz*, 46 B.R. 880, 884 (Bankr. D.Nev. 1985).

I conclude that the Creditor has failed to plead a plausible claim for non-dischargeability under § 523(a)(4). I will, therefore, grant the Motion to Dismiss as to Count Two of the Second Amended Complaint.

The Debtor has requested that the Motion to Dismiss be granted with prejudice. The Creditor has already had three opportunities to plead a cognizable claim under § 523(a)(4). A motion to dismiss may be granted with prejudice based upon undue delay, bad faith, repeated failure to cure deficiencies by previous amendments, or futility of amendment. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997); *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1413 (3d Cir. 1993).

This non-dischargeability action was commenced by a Complaint filed on October 6, 2016. However, the Diversity Action was commenced on November 26, 2013, and it is alleged that the foal was delivered from the Broodmare on May 8, 2012, more than five years ago. I recognize that the mere passage of time does not require denial of leave to amend. However, I do consider the passage of time in this matter to be significant. More importantly, I conclude that allowing further leave to amend with respect to a purported cause of action under § 523(a)(4) would be futile. There has been a repeated failure to show that a trust existed or that the Debtor acted in a fiduciary capacity in dealing with the Creditor. Thus, I will dismiss Count Two of the Second Amended Complaint, with prejudice.

### IV. Conclusion

Based upon the above, a Judgment will be entered denying the Motion to Dismiss as to Count One of the Second Amended Complaint. The Debtor will be allowed twenty-one days to

file an Answer to Count One. The Judgment will grant the Motion to Dismiss as to Count Two, with prejudice.

By the Court,

*Robert N. Opel II* (signature)

Robert N. Opel, II, Chief Bankruptcy Judge
(BI)

Date: July 28, 2017